Good afternoon, Illinois Appellate Court, First District. Court is now in session, the First Division. The Honorable Justice Carl Anthony Walker presiding, case number 1-9-2-0-9-3, Margaret Zadaratsky versus Jennifer Poma. Good afternoon, everybody. I'm Justice Walker and I have here with me Justice Hyman and Justice Coghlan, and I'd like to have the lawyers to please introduce yourselves. Raymond P. Fabricius for the Appellant. Good afternoon. David Jasmer for the Plaintiff, Margarita Zadaratsky. Okay, and let's start with you. Now, it says on your screen, David Jasmer, and I know that's not you, so you may want to fix your name there because otherwise we're probably going to be calling you that throughout. You're speaking to Mr. Fabricius, Your Honor? Actually, I think you both have a different name, don't you? No. Okay, I'm sorry. Both names are correct, Justice. Oh, they are? Okay, I'm sorry. Okay, so Mr. Jasmer, you're here for the Appellant, correct? I'm here for the Appellee. You're here for the Appellee. I'm sorry. Okay, Mr. Fabricius, go ahead and introduce yourself. Good afternoon. My name is Raymond Fabricius and I represent the Defendant or the Appellant, Jennifer Poma, at the time the case was filed with Jennifer Murphy. Okay, and then Mr. Jasmer, you're here on behalf of the Appellee, correct? Yes, Your Honor. All right, and Mr. Fabricius, how much time do you need? 15, 20 minutes taps. I'd like to reserve just a few minutes for my reply, for rebuttal. Okay, we'll allow you to do that. And Mr. Jasmer, how much time do you need? I'm not really sure, but if I could just reserve an equal amount of time if necessary, but I suppose it may depend on questions of the court and that type of thing. Yeah, well, if you run out of time, we'll give you more time, but what we'll do is we'll allow you the full 20 minutes for your argument because you won't get a chance to rebut anything. Okay, thank you. All right, so let's go ahead, Mr. Fabricius. You can get started. Thank you. Thank you, Justice. If it pleases the court, Mr. Jasmer, I don't plan on taking the whole 15 or 20 minutes or whatever, but if there are any questions, I invite them. I think this is a very simple case. The issue, I think, is simple. I am not asking this court to create law, change law. I'm not asking that law be stretched to apply to an issue that it hasn't been previously applied to. I'm simply asking this court to find that the trial court abused its discretion in failing to apply what I believe to be a very simple rule of evidence. Specifically, the trial court allowed the plaintiff to introduce medical bills without laying the proper foundation. Well, even if that is the primary issue here, Mr. Fabricius, just make it clear to us that there were proper objections made throughout and that the issue has not been waived. So, do you want to deal with that part of the case first? Sure. When you read the record, the only time the issue of the medical bills was brought, I will say, properly before the court was after the evidence had concluded, after I had rested my case and there was a jury instruction conference. During the plaintiff's case in chief, there was no... The judge said they were introduced into evidence. They were actually just introduced into the record, so to speak. It wasn't until the jury instruction conference, it was the second jury instruction conference, where there was actually a discussion about having the bills introduced into evidence. On the record, the judge made a comment about that he was already aware that there was a problem with the bills because during the course of the trial, there had been conversation about whether or not the proper foundation was going to be laid. Is that in the record anywhere? Because I don't see that in the record. No. In the jury instruction conference... No, but you said throughout the trial, but that's not in the record. Correct. It's not in the record because... We can't consider it, correct? Correct. But there was never anything on the record until that point to move the exhibits or the bills into evidence. So, the first time it was ever placed on the record that the plaintiff wanted to introduce the bills into record, at that time I objected. And I told the judge, we discussed about the fact that there was an objection to the bills being introduced because the foundation had not been laid for the bills. Are you saying that nobody ever moved to have these bills admitted into the record, into evidence, into anything prior to the instruction conference? Right. At the close of the plaintiff's case... I can't hear you. I'm sorry. At the close of the plaintiff's case in chief, we went directly into the defendant's case and the introduction of exhibits with Natty Bratz. And so, it wasn't waived. I assume it wasn't waived because it was never discussed. The first time that it was discussed was in the jury instruction conference. And did that apply to all of the exhibits or just the bills? That's the only exhibits there were. Okay. So, all the exhibits. I'm not aware. I don't recall there being any other exhibits other than the bills. There may have been, but no, everything was introduced after all of the evidence had closed. And nobody was asking for the jury to look at photographs or photographs and evidence or anything of that nature? No, I do not recall photographs being an issue in the case. The facts of the accident really were not an issue in the case. Negligence was admitted. I'll briefly tell you it was a simple automobile accident on September 24th of 2012. But we know the background. We know the background. So, you know that there wasn't an issue regarding negligence. The whole issue in the case was whether or not the plaintiff was injured. And if she was injured, what was the nature and extent of the injury? She had a complicated pre-accident history. The plaintiff had Dr. Herman who testified. Dr. Herman first saw her in October of 2013. I had an expert, Dr. Bloom-Brackett, and the two of them disagreed on whether the plaintiff was injured and to what extent she was injured. So, again, there's a lot to the case, but the issue was a very simple one. The plaintiff testified her bills were paid in full. Mr. Jasmer, in his opening statement... One other question. Were these actual bills, the actual bills, were they showed to any of the witnesses at all? The plaintiff. Okay. And so were they marked for purposes of identification as exhibit, you know, whatever for identification? By the rule of it. For identification purposes? Correct. They were not ever showed to the doctor? Correct. Right. Right. And on that topic, the doctor was never asked about any expertise in the reasonableness of bills. Okay. I didn't mean to interrupt your train of thought. I just wanted to... I appreciate that. I appreciate the question because, I mean, part of what I'm standing here thinking, you know, I've said everything in my brief. I just, you know, I asked for oral arguments because I wanted to emphasize, you know, as Justice Walker brought up, nothing's waived. And as your Honor or Justice brought up, the proper foundation was not laid for Dr. Herman to give any opinion. I want to go back to something you were saying, and that is the testimony of the plaintiff. Okay. You had just mentioned about the test. The plaintiff did testify that the bill was for surgery from Lutheran General. And then the question was, has that bill been paid? And the answer was yes. Okay. So now you say, well, it has... you're saying it has not been paid, or we don't know what's been paid. But we have testimony of the plaintiff that it was paid, period. Right? There's no cross-examination on that issue anywhere. Correct. There's no expert witness saying otherwise. There's no witness saying otherwise. Well, the bill shows otherwise. No, I'm not saying the bill. I'm saying that looking at the record, you had an opportunity, did you not, to cross-examine the plaintiff? An opportunity to cross the plaintiff, yes. And you did not ask her any questions about how she knew whether the bill was paid or not, did you? Well, one, I had to be very careful based on Arthur v. Couture and Wills v. Foster. I could not point out the fact that your bills weren't paid in full, or your bills were paid by Medicare. I'm precluded from doing that. Right. I understand that. But that doesn't mean... she said it was paid in full, and that's what we have in the record. Correct. And now you're saying, your argument as well, it was not paid in full, but we have testimony. So I'm saying she testified it was paid in full. Why can't we accept that? Because we know it to be false. How do we know it to be false? Because the exhibits themselves show that they weren't paid in full. The exhibits themselves show, for instance, there's a bill from Dr. Herman's office, Center for Spine and Spine Surgery, or from his practice, for $103,000. And approximately 6,000 of it was paid. I'm not talking about that right now. I'm talking about the Lutheran General Bill. But with regard to the Lutheran General Bill, she testified it was paid. Correct. And I guess I'll go to the Pleszewicz v. Smith case, where the court held you can't... the plaintiff can't testify to things known to not be true. The plaintiff did say the bills were paid in full. Mr. Jasmer, when we were arguing the bills, pointed out to the court that, well, the bills weren't paid in full, but he had called the providers and found that there was no balance owing. Now, there's a considerable difference between a bill being paid in full and no balance owing. No, wait, wait, wait, wait. The question was not, was the bill paid in full? The question was, was that bill paid? And the answer was yes. And you're saying that's not true? Correct. Now, why is that not true? Because from what you just said, it was true. Well, and actually, I take it back. What Ms. Zaretsky testified was the bill is paid. Right. But the bill wasn't paid. The bill was only paid in part. It doesn't matter. I mean, because the bill was paid. As you said, there's certain requirements, you can't tell some things you can't tell the jury. But the question was, which is a legitimate question. Was it paid? And she said, yes. We don't have anything else that says that that's not true. I mean, the bill is from 2015, correct? Which is when the surgery was performed. Correct. August of 2015. Okay. So we don't have a later bill, but we have the original bill. And she testifies and she can testify. I mean, we don't know her basis, but you didn't ask the basis for her knowledge. You're correct. I didn't ask the basis. Again, I don't think I could ask the basis because for me to ask the basis, I would violate Couture and Foster. I mean, I could I could brought out the fact that we know the bill wasn't paid in full because you receive Medicare benefits and Medicare doesn't pay 100%. The only thing that I take and I submit to the court that what took place was the plaintiff was saying the bills were paid because her attorney had ascertained there was no balance owing. Now, no balance owing isn't the same as having a bill paid in full. And that's what the court in Klusiewicz addressed was that you can't. And in that case, the plaintiff testified the bill's paid in full and the appellate court held that that's improper. It's improper testimony because we know it's not true. And that's what happened in this case. The issue here is that, first of all, had the bill has been attempted to be admitted into evidence during the plaintiff's case in chief or during the plaintiff's testimony, you would have objected to those bills being introduced to evidence, correct? Right. And there's no reason to object because they weren't offered at that time. Counselor never asked. So the first time that they were offered was at the jury instruction conference and you did object. Right. And you objected because the bills were not paid in full. Correct. At that point, it became a legal issue for the trial judge as to whether or not these bills that are not paid in full should be admitted. Correct. Okay. So that's where your argument lies, correct? Right. My argument is completely on there's two ways to get a bill into evidence. One is you show the bill is paid and the other is you call a witness to testify to one that they're familiar with the geographical area, what the charges are in the area by similar providers, that they're familiar with the services rendered and that they can testify these amounts are fair and reasonable. And if you do that, you get the whole bill in. And if you don't do that, the only way to get a bill in or a part of the bill is to show payment. And if there's a bill for $103,000, like Dr. Herman's and $6,000 of the bill is paid, by showing payment, you get $6,000 of that bill. You don't get $103,000 in by saying, well, the bill has been satisfied, or there's been some payment and the rest has been waived. So I get the whole bill in. And the rationale behind that is, is that when you make payment of a bill, it's presumed that you would only make payment on a bill that's reasonable and usual. And basically plaintiff's argument is, well, if the whole bill has been satisfied, we get the presumption that the whole bill is fair and reasonable. And that defies the logic behind it. Because the logic behind the theory is that you wouldn't pay a bill that's unreasonable. So the only amount of a bill that's presumed to be fair and reasonable is the amount, or usual and customary, whatever terms you want to use, is the amount that's actually been paid. And that's approach the plaintiff took was that, you know, these bills are paid. And I submit it's not sufficient for a plaintiff to go out to take the stand and inaccurately testify, well, this bill has been paid, and then there's the, you know, so it's assumed or, you know, that there's been full payment when there hasn't. To get the presumption of that a bill is fair and reasonable, you have to show the amount that was actually paid, and then that amount is presumed to be fair and reasonable. Why couldn't you have made an objection on the record at that point at the trial, and had a sidebar to discuss it? Because I don't think it's appropriate for me to raise an objection until the plaintiff moves to do something with the bill. Well, there was a sidebar, though. You requested a sidebar that page 87 of the record, but that wasn't transcribed, so you're not on the records of the sidebar? Right. Okay. And I will tell you, I mean, that's, you know, that's one of the times, you know, the topic of the bills being paid was an issue throughout the trial. And, you know, and one of the, you know, we discussed the fact that, well, you know, the plaintiff only gets in what's been paid because the plaintiff had no expert, no, you know, no billing clerks or experts to testify about the bills being fair and reasonable. So there was this ongoing theme about, well, you got to show the bills are fair. Did Dr. Herman testify, maybe not to the hospital, but to the surgeon field, that it was fair and reasonable? I submit no. And I submit, you know, Dr. Herman testified he had no familiarity with the charges, and when it was, and it was, and it wasn't a line of questioning where he was you know, are you, he, Dr. Herman didn't even testify to being familiar about his own bill. And counselor just asked him a couple, you know, casual comments about, well, you know, have you seen these, you know, is it about $150,000 for surgery? And he said, well, yeah, that sounds about right. It's usually a hundred for the hospital and 50 for the surgeon. And, you know, this case, it was the exact opposite. And, and my argument is, is that incompetent, you know, testimony, is that the proper foundation for the bills? Was he testifying about his own bill? He wasn't testifying. Counsel did not ask him about the bill. He didn't say anything to Dr. Herman about, well, your bill is such and such amount. He simply asked Dr. Herman does, you know, that surgery in this case was about $150,000. Does that sound about right? And Dr. Herman said, yeah, that sounds right. Now there had not been any foundation laid for it. And when, when the topic came up in the jury instruction conference, there was no reference at all made to Dr. Herman or to his testimony or that, you know, that he had laid any type of a foundation. And, and, and I submit, if you go back. Well, actually he, he kind of. Backtracked because he said it's often flipped. It's often 50 for us and a hundred for the hospital, but I don't know those numbers. So I couldn't tell you for sure. Right. For me, it's reading and it seems like he didn't really know. Right. And, and in the class, in which case that's the appellate court talked about the fact that the defendant had an expert to testify about the reasonableness of the bills. And the appellate court in that case said, well, that's, you know, he wasn't properly qualified to give him its qualifications were properly laid down. And so his opinion is meaningless. And that's what you're saying. You're saying that there's no foundation for what the doctor said, correct? Foundation objections must be made at a time where they're waived. Correct. Correct. Correct. And you may know foundation to either the plaintiff or the doctor, therefore they're waived. You can't have it both ways. The law is very clear on that. If you don't interpose an objection on foundation and you mentioned foundation, in fact, at the time you raised it before the judge on the jury instruction time, you raised about foundation. And so it goes back to the trial. And if there's no objection on foundation and that's been waived, why is that not true? Because when Dr. Herman's testimony was never discussed as a foundation for the bills, when, when plaintiff's counsel said, well, I moved to introduce the bills and I'm relying on Dr. Dr. Herman's testimony for the foundation, I would have objected and said, he, one, he hasn't been qualified to, he was never shown the bills. He didn't do any type of it. He didn't testify to doing any type of a comparison. He testified to having no familiarity. He didn't testify to having any familiarity with physical therapy bills. And when he testified regarding the hospital and the surgical bills, he even said, I don't know. And he said, they're usually flipped the other way around. The fact you can't object later on foundation grounds, unless you object at the time of the if, if counsel would have, I'm just talking foundation. I'm just talking to counsel. If counsel would have asked for leave to approach Dr. Herman and said, I'd like to show the doctor, the bills I would have objected because there would have been improper foundation. There also would have been other issues as well, but he never, he never relied on Dr. Herman to introduce the bills when it came to the jury instruction conference and he moved to introduce the bills. He didn't say to Dr. Herman's testimony, if he would have, I would have objected. The first mention of Dr. Herman's testimony is in, is in Affily's brief. And there was never an opportunity to Dr. Herman was asked about the reasonableness of the $100,000 surgeon's bill. He stated it was pretty typical, but given that you're arguing now that he was not certified as an expert, shouldn't you have objected to him even answering that question about the reasonableness of the bill? Because that's no more than if I want to stand as a non-doctor trying to answer to the reasonableness of the bill. At that point, my thought was this was some preparatory question and that, you know, and it's like, okay, do you have an opinion? If he would have said at that point, do you have an opinion? I would have objected. One of the objections would have been you haven't established his qualifications as an expert and two, he's never looked at the bills. But he was asked whether or not the $100,000 bill for the surgeon was reasonable. And he said, it's pretty typical. And there was no objection there. And I disagree that he didn't ask a bill of $150,000. He was asked again, some vague question about, well, $150,000 for surgery, does that sound about right? And the doctor said, yes, it wasn't. It wasn't in the form of what I would submit as a question that you would give to an expert in terms of, you know, do you have an opinion within a reasonable degree of medical certainty as to whether or not this is a fair and reasonable charge? It wasn't, it wasn't asked in the way of laying a foundation for an opinion. It was just an off the cuff question. Was he ever disclosed to be an expert for that particular area? Not in, no. And should he have been, or as a treater, was that fair game to go into? And that's, and that's what I wanted to say about other issues. Plaintiff's counsel attempted, it requested leave approaching a trial date to make additional disclosures and was not allowed. So, Additional disclosures of expert witnesses? And Dr. Herman. On the issue of the bills. Dr. Herman's deposition had actually, it was a refiled case. Dr. Herman's deposition was actually taken two times and in both depositions, Dr. Herman was asked about his care and treatment of the plaintiff and his opinions on the issue of causation. There were two separate car accidents, so there was a lot that was going through. And nowhere was Dr. Herman ever given an opinion on the reasonableness of his charges or anyone else. And I don't want to say what was going through my mind at the trial, but my thought was he can't code it. And it just quickly moved on. And I was just like, you know, I didn't want to, I didn't want to, you know, make a mountain out of a molehill with Dr. Herman just saying, well, I don't know, you know, usually it sounds like those numbers are flipped around. Counsel, you've been practicing a long time. You notice you have to constantly object. You can't have a standing objection. So you've got to object along the way. And that's where some of the difficulty may be is that that testimony got in, but now there's a different issue based on Justice Kavanaugh's questions now, that he was never identified as an expert to be testifying in the case, but he wasn't treated. So to that extent, he was identified. And I completely agree. In hindsight, I should have objected. You know, the problem, you know, in a trial, different thoughts go through your mind. And I'm not trying to, I'm not going to pretend. I remember what was going through my mind at that time. I, you know, as to why I don't object, I do remember that it was just a casual question. And when it, when counsel didn't go any further, I didn't think it was necessary for me to address it again. My thought was when you're talking about S1, S2, S3, you know, you're telling us that he was never identified as an expert. Correct. And he was not certified as an expert when he took the stand. He did. And you could tell from the few questions that Dr. Herman was asked, he was not asked any questions at all about his familiarity with charges from hospitals or even neurosurgeons such as himself or his office. He was asked specifically if he has an opinion as to whether or not the fusion surgery that he performed about that. And that's totally appropriate, right? Because he's a treater. But I still submit, there has to be the foundation for it. Well, he was asked that question, answered yes. And you're saying that he shouldn't have been autotestified to that either? I think, again, in hindsight, I should have objected and said, wait, we don't have the necessary qualifications yet. There's, it's often, you know, and the brief is that, you know, is a surgeon at Loyola Medical Center. You know, they're employees of the medical center. It's a huge institution. They have no input or no knowledge at all about billing. And so just to say that you're a neurosurgeon and I did the surgery, so therefore I could say it's, you know, what's reasonable and customary. No, but I'm saying he could give an opinion about his own surgery, whether or not it was caused by some billing. I'm asking, was it appropriate for him to give an opinion about what he actually did? And that is a surgery. Absolutely. Okay. And I'm sorry. That question was phrased in the, within the realm of the proper way to ask an opinion. Do you have an opinion? Whereas these questions about the propriety of the bill, they weren't asked in that way. And that's, you know, again, in hindsight, I should have objected. I should have said it's an improper question. I, you know, my thought was, I don't know where we're going here. And when counsel just moved on, I, you know, I just thought there's no problem. I'm trying to figure out how we can give opinion testimony on the billing. Because I didn't, I didn't know how, how he put it from what you're saying. He actually shouldn't have been able to do that. Right. And he, I'm just saying, I just want to be clear, but you also didn't object. True. But, you know, but I, I submit just saying an opinion about, well, I think $150,000 is reasonable for a surgery. That doesn't lay the foundation for the bill. But what we're talking about, I'm going back to this question about his own bill. This bill was the $100,000 bill, correct? 103. Right. Yeah. 104 is what I'm seeing. Okay. All right. Yeah. Okay. So, so then he, so you're saying that your, your position don't be for his own bill. He would have to testify that I'm familiar with the billing practice in my office. I'm, I'm familiar with the billing, you know, the, with the, with these amounts are typical and reasonable, typical charges for similar services in this geographic region, right? Just because he's a doctor in a, in a, you know, in a large practice, doesn't mean that he has any familiarity with the, with what the billing charges are. Is there any way that the bill can go out and him not know about it? I mean, does that happen? And I never did personally. So I, I'm sorry about that, but it go out and might not even know what the bill is. I mean, I would, you know, I have to speak outside this case, but absolutely. It goes out of the department. There's billing coders. There's individual. In this case, he was never shown the bill or asked about the bill. Correct. Generally, but he was never given the hard copy. Here's this bill. Have you reviewed it? And based on your review, do you have an opinion within a reasonable degree as to whether the charges in there are fair and reasonable? I submit that's the proper foundation. And then, you know, and then the plaintiff, you know, the plaintiff's counsel goes before the judge and says, your honor, I moved to introduce this bill, you know, based on Dr. Herman's testimony, the proper foundation has been laid and none of that occurred. But again, you didn't object. Because I submit, and in hindsight, I would have objected. I like to, you know, I like to think that, you know, I want to limit my objections to where I think they're necessary and relevant. I, in hindsight, sure, I should have objected. You know, you run the, you run the concern of, am I offending the judge or am I offending the jury? I'm just jumping up and down and objecting. You know, my thought is that I'm going to object when the, when the plaintiff's doctor is, let me show you the bill, or, or, or when he moves to introduce the exhibit into evidence, I'm going to object and say, we don't have the proper foundation. Well, one thing that I've noticed, Mr. Provicius, is to just simply say to the judge, I'm so sorry, I'm only objecting for the appellate court. I'm just objecting for them. And I apologize, judge, that I'm objecting. I did it all the time. I apologize, judge, that I'm objecting. But I'm doing it for the appellate court. In hindsight, I think I would have given the opportunity again, I would, I would, but I don't think it was a waiver. I don't think I have to object unless there's been a proper foundation late. If plaintiff could say, I moved to introduce these bills based on Dr. Herman's testimony, I would think I waived that issue because I didn't object. But he can't because Dr. Herman didn't testify to having any familiarity. He didn't testify to having reviewed the bills. So his, my, my, my thought is Dr. Herman's testimony is a knowledge. Great. You go ahead. First, I appreciate your candor. I do. I think all of us do. But the question is, I'm found on foundation. I have two questions, right? First, the doctor doesn't have to see the bill or the plaintiff. They don't have to see the bill to be asked about a bill, do they? It's not a requirement. There's nowhere in the law says you have to see the bill. I, I, I, I believe the doctor has to be, he doesn't have to say he saw the actual bill. He has to testify. He's familiar with all of the services rendered. But you said he had to see the bill. So that's not true. I just wanted to say they don't have to see the bill. Well, correct. I guess let me, my response to that is then how do they know what the charges are? They know from the bill because there's the charges are the charges, right? You don't have to see something to be able to testify. That's why we have testimony. You know, otherwise you'd be showing everybody everything. They couldn't testify to anything without seeing something that that's not true. You don't have to see it. So, I mean, you're saying that there's some law that says in order to get a bill in, it has to be seen by the witness. The witness has to know what the services provided were, and the witness has to know what the charge was. Okay. Now, I guess you could do that without showing the witness, the actual bill. That's my point. Okay. So we'll do that. Second point, and I'm not trying to beat a dead horse. I really am not. But you keep coming back to the fact of foundation. And again, the law is very clear on foundation. If you don't object at the time of trial on foundation, it's waived. You can't bring foundation objections at a later date. That's not the law. Okay. We have certain procedures of evidence, and that's one of them. So, with regard to that, if you didn't object at the time, and then you keep arguing foundation, it hasn't been preserved. I'm trying to get my head around that. Well, the foundation doesn't have to be laid for Dr. Herman saying, well, surgery costs about $150,000. The foundation has to be laid for the bills. And Dr. Herman just saying, well, surgery costs about $150,000. It doesn't establish a foundation for a $104,000 surgical bill and a, I think it was $57,000 bill for Lutheran General Hospital. So you would agree that those two bills are definitely in different categories, correct? Right. Because the doctor testified that he wasn't sure about the hospital bill. Well, when it came down to it, he said, I don't know. So, but the other bill is kind of his own bill. Right. And he said, typically I would expect my bill to be $50,000. So, I mean, he acknowledges he doesn't have the expertise or at least the familiarity with these charges to give an opinion, and he doesn't give an opinion. He just says, you know, he's just asked, does that sound, does that sound like, you know, a good number? And I submit to, to make a, to be a foundation for evidence that for something to be introduced, he has to put it in the terms of, you know, within a reasonable degree of certainty. That's, that's what my thought is. And he, and he acknowledges he doesn't know. It's actually discussed in Couture. It's discussed in Foster and it's discussed in Klesiewicz v. Smith. That, you know, that you have to, the witness to lay the foundation has to first be qualified as a witness. And then they have to testify that they've looked at, and I, and I, and I keep saying they have to look at the bills, but I agree. They don't have to look at the actual bills, but they have to look at what the services were that were provided. And they have to see what the charges were for that, for those services. And typically that's done by showing them the bill. I don't know what else you could show them. I guess you could show them a statement of what was done and what the charges are in a form other than a bill, but they have to look at something to see that they, so they could testify. I'm familiar with the services and I'm familiar with the charges and that was that done here. And I, and I submit back to Herman, there was never any attempt to even qualify him as an expert. And I, and with that, I, you know, I, I submit that the plaintiff had $176,000 in bills. And based on the bills themselves, we, we know that, you know, eight, about $8,600 of them was paid. There's, you know, and the jury awarded $160,000, which has no relationship at all to the evidence. And I will, you know, in the record and in opening statements, the plaintiff, the plaintiff's counsel made a comment about the amount of the bills being $176,000, 62 cents and 91 cents. He said, he said the specific amount. And then he said, it's according, he said, my client's on the hook to repay that. So when, you know, when, when the plaintiff testifies that these bills are paid in full, the jury is left with the impression that, well, gee, you know, she's got to pay $176,000. I'll give you a chance to finish that last sentence, but you are out of time right now. If you want to take some time for rebuttal. I will, I will save my time. Thank you. Great. And Mr. Justin. Thanks, Jerry. I feel like we've gotten way off track on a lot of these things. I feel like some things that are not accurate are being said to the court. The, in their reply brief, I pointed out a lot of the omissions and misstatements in the initial briefing. There continue to be plenty of omissions and misstatements in the reply brief as well, which doesn't even address the points that are made in our response brief. Dr. Hermit, you know, defendants say, oh, they cite some pages to the record as our answers to 213. Those were not our answers to interrogatories. We laid out all these opinions in the 213s. I always submit in every case, the opinions of the treating physician, the treating surgeon, they're going to testify as to the cost. Dr. Herman test, he was deposed twice, testified about that. And he specifically testified. The law under couture says that where you're, where a party seeking admission into evidence of a bill has not been paid can establish reasonableness by introducing the testimony of a services rendered and the usual customary charges for such services. Once the witness is shown to possess the requisite knowledge, the reasonableness requirement necessary for admission is satisfied if the witness testifies that the bills are fair and reasonable. So I asked him, and I pointed out on pages six and seven, I point to that testimony of Dr. Herman. And he testified extensively about this. And this was what was asked of him. The operation, I'm giving him the answers, the is usually about three hours long and he goes on to describe some of the risks of it. And then I said, and it can be an expensive surgery as well. Is that right? Sure. In fact, I think you had initially before you did the surgery at his deposition estimated, it would be as much as $200,000 total to do the surgery. And then he answers with the hospital costs and everything. Yes, that goes to showing that he's intimately familiar with these bills. This is a highly experienced neurosurgeon. He's been doing this for 30 years, has credentials up the wazoo, and he had testified at his deposition about that. And that's what I went into. That shows his familiarity with it. I don't have to ask it in every question. Do you have a reasonable- Well, wait a minute. You're saying that you're talking about his testimony before the operation even occurred as some kind of evidence of what this bill was? No, I'm talking about his familiarity with what he- But what you just mentioned is testimony that you just said was given before the operation even occurred. What he's testifying there too, in my view, and by the way, this is really an abuse of discretion standard. It was something that's looked at, heard by the trial court, and then heard by the jury. But what Dr. Herman has testified, so it's really their opinion and their conclusion that counts. But what he testified to is his familiarity with the specific charges involved in a surgery like this. And then he gave an estimate before the surgery that it would be as much as $200,000. And then he gets asked specifically about his bill in this case. Is that in our records? Yes. It's here in the testimony that I point out at R231, 232. No, I know that, but this deposition that you're talking about or whatever. Oh, I'm sorry. That I don't know. Well, I think that's kind of important because we really can't be considering things that aren't on the record. Well, it's not my appeal, but I do ask him here about his prior estimate of the surgery, and he testified to that. Again- Counsel, if it's not in this record, I really don't think it's appropriate to bring it up. I think that we're having a miscommunication here. I think what you're saying is it's in the record at those pages. Correct. Thank you. So it is in our record? Yes. Yes. Okay. Yeah. He talked about the deposition, but now he's talking about the record and the pages in the record. Thank you for the clarification. And the deposition is in the record? No, it doesn't matter. We're not looking at a deposition. We're looking at what's in the and answers in the record at what, 261? It was 231, 232. 231, 232. In our record. Also set forth in my response on page 6-7. Yeah, I have that right here. Yeah. So I'm just reading along, and it goes to show that Dr. Herman was asked specifically about this bill, says, and then, and I think this one got done, or he asked about $200,000 with the hospital cost and everything. Yes. And I think this one got done for $150,000 total. Does that sound reasonable? Yeah. Bargain deal. Right. So actually what he's saying is that this was, he's joking, but it was less than what his original estimate was. That certainly tells the jury that this was a reasonable amount. I then specifically asked him, you have to get paid. He said, well, you know, I don't get paid that, you know, that full amount of the $200,000. Well, I think that there's a surgeon's bill for $100,000. Is that a reasonable fee for this type of neurosurgery? And his answer is, I mean, that's pretty typical. He then does go on to say that it's often flipped, but he'd already testified that it's typical, but if anything, his next comment about it, it's often flipped goes to, could be seen as a sufficient foundation for the hospital bill. But I didn't make that argument necessarily in my brief, because I really think what he talks about is he is familiar with, and he testified that he's familiar with his own bill and that that's reasonable. He testified to that. The trial judge heard that, allowed that. It was without objection. It was without any cross-examination as to his long experience. They make all these points in their appellate, I mean, they waited until their appellate reply brief to question the foundation of Dr. Herman's testimony. But the trial judge heard that testimony, it was accepted, and the jury found that credible and based their determination on that. So I don't think that there really should be an issue as to that. I have a question. Why was he not shown the bill? Why didn't you ask the question whether he specifically thought it was reasonable? I mean, are you arguing that typical means reasonable? Yeah, that was his answer when I asked him reasonably. He said, yes, yes, absolutely. And I should have, you know, we all, you know, could do things more artfully and, you know, but, you know, but I don't think it was necessary. So I don't think it's necessary for me to have shown him that would have been preferable. Yes, certainly it was. From what I've seen, I think that both of you did an excellent job. And I don't think any of us expect either of you to be perfect. So I don't think that's the thing. You know, I think that, you know, the ultimate question that your panel has to resolve is, was this overall a fair case, even if everything wasn't perfect and wasn't perfectly asked? And I wish I were perfect and everything perfectly. And this was a fair trial. This jury heard the testimony of Dr. Herman. There's no issue as to whether it was proper disclosed. It's never been raised. It's not an issue in this case. He testified to that. It was proper testimony. Okay, I have a question for you. Were these bills paid or not? Well, the only issue, the only bills at issue on this appeal are the hospital bill and the surgeon's bill. So there are two different foundations for them, as I laid out in my response brief. We've talked extensively about Dr. Herman's testimony. Was the hospital bill paid? Yes. And that was a testimony of the plaintiff. And there's no... Okay, I'm not asking what the testimony of the plaintiff was. Correct. Implying or inferring these bills were not paid, that seems to be a contested issue. To me, that's like the most basic thing. You guys can't agree on whether or not the bills are paid? Well, look, if they had any reason to contest that, then they would have brought that up to trial. So that's something that has to be brought out at trial. The plaintiff testified... So counsel just told us that the bills were not paid, and you're saying that they were. Well, they also... I mean, they also make several other misstatements. No, I'm asking you, were the bills paid? The bills were paid, yes. And that's what the plaintiff testified to at trial. They also claim... Okay, and who paid them? The plaintiff paid them. Well, but isn't it correct that the bills reflect that they're not paid? Well, some of the bills did reflect payments by other providers. Some of them didn't. But in this appeal, there are only two of those bills that are at issue for purposes of this appeal, because the whole case was about whether the surgery was cause-related. So those two bills were approximately $160,000 as I added up. And they don't contest that in their reply brief. They never addressed that. They don't contest that they didn't object to either the plaintiff or the doctor's testimony. And those two bills are the surgeon's bill and the hospital's bill. So as to the hospital bill, yes, that was paid. And the surgeon's bill? And the surgeon's bill. The surgeon's bill reflects a payment by Medicare, but the surgeon's testimony, in my view, was the foundation for the reasonableness as to that bill. I think there are two different foundations for it. Although, as I say, well, I'll leave that to be. If there are any questions, I guess I could address them. I don't know if I... Well, I do have one other question. Because Dr. Herman did not actually testify that the hospital bill wasn't that reasonable. I agree with you that when you asked the question concerning his bill, the $100,000, $104,000 bill, his answer was that it's pretty typical. You asked was it reasonable, and he said pretty typical. He said, yes, pretty typical. So he answered that question. But as to the hospital bill, he did not state, yes, the hospital bill was, in fact, reasonable. He said he was not sure. I agree. I agree with you. And that's why I didn't argue that in my brief. I'm just saying, I mean, I suppose it could be read like that. But I did not argue that. And I do agree with you. If we have two paid bills, why do we even need anybody to say that they're reasonable? Well, the one bill is paid, and the other bill is not. So that's- The surgeon's bill is not paid. Correct. I'm sorry. I misunderstood. I thought you said that it was. Part of it was paid. It's not on your standard. Say again? Part of the bill was paid for the surgeon, $6,000? Correct. And there was an issue, too, around the bills. You know, the collateral source rule was an issue in this trial, because obviously nobody wanted to go into the fact that insurance was paying any portion of these bills, right? I suppose, yes. It's a violation of the law to do that. As to what? As to bringing in collateral source? True. Yes. But as to defendant's argument that somehow hand-tied them as to cross-examining the plaintiff, I don't agree with that. I think there are many ways. And I think Justice Hyman had mentioned some. They certainly were free and able to question plaintiff. And if there were any issue as to that, they could have asked to voir dire the plaintiff outside the presence of the jury. But they did not do that. So I think that issue has been waived. And you do agree that no one moved for admission of the bills and evidence until the jury trial conference? Well, there were two moments in time. But yes, I do agree with that. But this case was always about the medical bills. And so the testimony was going in. I set that out in my opening statement. Counsel certainly was well aware of that for the years that this case was going on. And so the testimony was set out. It's very common at trial to move for the admission of exhibits after the closing of the plaintiff's case. But it's also common to move for entry of the admission during a conference on the jury instructions. Well, I don't know about that. But I'm just saying there are two different moments in time when the evidence is going in. Plaintiff's is being shown the hospital bill. This is the full amount. If they had an objection, they should have made it then. And same thing as Dr. Herman's testimony. Because that's all as to the foundation. They can't come back now and their appellate reply brief and claim that there's some issue as to foundation. I don't think that's appropriate or should be permitted. And I think what he's raising, Mr. Jesper, is that you never actually ended that questioning. First of all, you did an excellent job in questioning Dr. Herman. And Dr. Herman's credentials are impeccable. I want to say I'm just with you. And but you didn't close it out with normally when we're on trial, we close it out by saying, Judge, I'd like to sort of him as an expert. So then he can go on and give us all his expert opinion. But I think it's unquestionable that he definitely, based on his credentials, he's clearly an expert in this area. He's not only a medical doctor. He also has a PhD in neuroscience. Yeah, from MIT. I agree with you. This guy is impeccable. So but again, that's what I think what Mr. Fabricius has a problem with is that he was never he wasn't listed, apparently, as an expert for SAMHSA 213. That is incorrect. Sorry to interrupt. That is not accurate information. OK. I thought Mr. Fabricius said that. Did you hear that as well? I did hear him say that. I'm just saying, with all respect, and I think Ray is Mr. Fabricius is an excellent lawyer and obviously very experienced. But that is not accurate. OK, but you admit, though, that you didn't close it out after he testified and he made it real clear that he was an expert. He didn't hold back. He hit a home run in terms of laying out his background. But then you have been certified as an expert with the court. I'm sure that you're right that I didn't ask that question. I didn't know that I needed to. But I will from now on if I need to. But I don't think that's necessary when he's testifying. You should ask it. We should go ahead and make sure that the record is clear that we have an expert now testifying and therefore there's no pretty much on what he can tell you about the area. OK. But so anything further, Mr. Jaffray, if there are no further questions, we'll see if you allow me to ask any more questions. If anyone has any questions. Otherwise, I'll let counsel finish out. Well, we'll let you give a closing statement if the justices have no further questions. Thank you. Go ahead. You can close it out. Oh, I think I said it out in my response. I think that there's insufficient basis for the defendant's appeal. I think that the trial court was within their sound discretion in allowing the evidence in and allowing the medical bills in. And I don't think that defense has answered any of our arguments that we've set forth in our response brief. I ask that their appeal be denied. This case was tried to a jury. It may not have been perfect, but I think the evidence was properly admitted. And thank you for hearing us out. Thank you. And so, Mr. Verbrugis, we're going to hear from you, but I just want to ask you, is it your concern that Mr. Jasmer didn't ask that final question to have him certified by the court as an expert? Is that your concern? Because he's clearly an expert. Well, I don't know that I wasn't expecting Mr. Jasmer to ask the trial judge. Judge, I ask that Dr. Herman be acknowledged as an expert in his field of expertise. I agree with you, Dr. Herman is certainly a very well-qualified neurosurgeon. And I won't talk about my personal life with Dr. Herman, but I have no questions with Dr. Herman being a qualified neurosurgeon. I might disagree with him on certain opinions that he has regarding this case. But the fact that Dr. Herman is an expert as a neurosurgeon does not make him a qualified as an expert in billing. And Dr. Herman offered no testimony at all that he had any familiarity or expertise in the area of billing. And to say that I'm a neurosurgeon, so I could say my bill is $50,000, is that enough? Well, not that, but if you're a neurosurgeon, wouldn't you know what's reasonably charged for your services? Absolutely not. Absolutely not. You would have no idea. I have encountered- You're assuming that all the neurosurgeons are idiots. No, I assume neurosurgeons are extremely intelligent people. But what I'm saying is neurosurgeons are busy being neurosurgeons, and their concern isn't necessarily in what their charges are. Now, if you're a neurosurgeon in a sole practice, I assume you would be familiar enough with everything going on in your office that you would know what the nature of your charges are. If you're a neurosurgeon in a large practice, and I don't know that it was ever disclosed how many physicians were in Dr. Herman's office, at the time of trial, he's now with the University of Chicago. And I would submit to you, Dr. Herman has no familiarity at all. I don't know this for a fact, but I would assume Dr. Herman has no familiarity at all with the charges are at the University of Chicago. But that's not relevant because he's in a different practice at the time. Right, but it is- But he wasn't involved. One, we can't make an assumption that just because he was in a smaller practice, he knew his charges were, and we don't know how small it was. And I will tell you, he wasn't the only neurosurgeon in the office. So when he was asked whether or not those bills, his own bill, whether or not his bill was reasonable, just as Herman has pointed this out at least five times already, you didn't object. I agree I didn't object, but I do question, one, the qualifications that were laid for him to give the opinion, and two, he gave the opinion, well, it's usually $50,000. So I don't think that's a credible opinion to say, well, my bill is usually $50,000. Later, that's when he was asked about the entire bill, the entire $160,000, the $57,000 plus the $104,000, $161,000. But then when he was later asked specifically about the $104,000, he said, that's pretty typical. But I disagree. He was not asked specifically about his bill. He wasn't told your bill was $104,000, and your opinion was that bill fair and reasonable. If that question would have been, it would have been posed like that, I am extremely confident I would have objected saying that we don't have the proper foundation. And I disagree with Mr. Jasmer on the 213 disclosure, but my appeal and my argument in this case has absolutely nothing to do with Rule 213. You can look through the record, and there are a number of motions to supplement and make new disclosures by Mr. Jasmer. That's not, and the other reason I'm pointing that out is I disagree with Mr. Jasmer telling me that I'm wrong or saying that I'm wrong. That's not the issue in this case. I'm not raising a 213 issue. I am arguing that Dr. Herman was not qualified, the proper foundation was not laid for him to give an opinion, and he didn't give an opinion. He didn't. Let me ask you this. I mean, the sentence that you're not focusing on was the one before. Question. And I think, first he talked about the $200,000 total, which is what he had estimated before surgery. And then he says the question. And I think this one got done for $150,000 total. Okay. That's pretty close to the $160,000, right? And the question then goes on, does that sound reasonable? Yeah. Bargain deal. Now, if he doesn't know anything about billing, he doesn't know a bargain deal from an unbargain deal, from a rip-off. But he says it's a bargain deal. Right. That was his response. And then the question, well, you have to get paid. You know, it was kind of a joke. And then question. Well, I think there was a surgeon's bill. This is a question for $100,000. Is that a reasonable fee for this type of neurosurgery? I mean, that's pretty typical. I mean, doctors know, like lawyers know, you know, do you have to look at the bill in order to know, you know, if you charge $50,000 for this case, is that a reasonable for this type of case? You don't have to look at the bill. Doctors too. We're considering them. You have to look at their whole circumstances, what's going on here. And he knows, based upon their testimony, it seems to me, I'm just trying to pull you out on it. He knows what's typical. Well, I submit you can't ignore his next answer. His next answer is, you know, I'm not sure exactly. It's often flipped. It's often 50 for us and 100 for the hospital. But I don't know those numbers. So I couldn't tell you for sure. It's right there. No, he said it's often flipped. But here it wasn't flipped. So the fact that he said it's often flipped just shows, you know, it was a bargain. You know, you got a bargain here and you say, well, that's not good enough. But the doctor says it's a bargain based upon it. You know, usually it's flipped. But it wasn't flipped here. It also shows awareness to be able to say that it may have been flipped. I submit you can't. He can't say, well, I think that's a reasonable amount and then say, well, I don't know. I'm not. I'm not sure exactly. You know, it's not a credible opinion. Well, that's what he said about the hospital bill. I'm not sure. Right. But he says it's often flipped. He says, you know, it's often 50 for us. So his statement that it's usually 50 for us goes to show that the $100,000, and he doesn't know that $100,000 is reasonable. You know, that's not what he said. He says, I don't know for sure. That doesn't mean he doesn't know. If you're going to splice and dice his words, we can splice and dice too. You know, I think you're not giving him enough credit for what he's saying when you look at the words on the page. And in any event, there was no objection. So, well, the objection, I submit the objection is made when council moves to introduce the bill or shows the doctor the bill and says, doctor, is it, you know, other than just saying a ballpark figure of $150,000 or $100,000, none of the amounts are accurate. The surgeon bill is 104. The hospital bill, I think the total was about 57. We're talking about two different objections. When I was speaking earlier about you should have objected, I was speaking about whether or not he, the doctor had the expertise to even testify about the bills. Now, when the time for the bills to be admitted, that's a different objection, different issue. And you did, you appear to have properly objected at the time that the bills were offered into evidence. There's still a question, though, about the hospital bill and as to whether or not that bill was, in fact, does it get in as a paid bill or the other way that it could come in is through Dr. Herman's testimony. But Dr. Herman clearly said he didn't know whether or not that deal was. So the question we're still left with is whether or not that deal was paid. I think Justice Conlon has asked this question a few times and we've gotten different answers a few times. So what the hospital bill paid? Counsel made a comment that his client paid the bill herself. I don't know where that comes from. Every bill in here, and it's not just these two bills. There's physical therapy bills. There's an ATI bill for $6,600 that shows $1,000 was paid. There's nothing to indicate. Let me ask you a more specific question. The hospital bill that was actually admitted into evidence during the jury conference, that bill shows that it's not paid. Is that correct? Correct. That's the same bill that we have in our record. It shows it did not. It shows the outstanding balance. Right. It shows there's nothing to indicate. And it doesn't even show Medicare paid anything, which I submit probably occurred. And then there was a waiver of the balance because counsel made a comment to the judge How do we resolve this? What's our resolution for this? The plaintiff, the Klesiewicz case, which I believe is exactly on point, holds that you can't have false testimony that a bill is paid when you know it's not. You're answering a different question. You're answering a different question. The resolution of this is what happened in Klesiewicz is plaintiff's counsel is given the option of accepting that element of damages, the medical bills that were shown that we know are paid, which the bills reflect what was paid, or he gets a new trial on the issue of damages. Well, it's the bill that I paid or it depends on what this court finds, which I have no idea what this court's going to find, because I don't make the final decision here. We have three people that make the decision. But it's whether or not this court find that Dr. Herman properly testified as to his own bill being reasonable. That's also okay. Well, obviously, I disagree with it. I don't agree because you don't think that he was qualified to testify to his own bill. And I don't think an off-the-cuff question about, well, you know, your bill of $100,000, is that reasonable? I don't think it's sufficient. I, you know, Justice Hyman asked me before, does he have to see the actual bill? No. But I think there has to be more to the foundation and the opinion than, well, it's $100,000, is it reasonable? There has to be further inquiry. So I don't, I just don't think an off-the-cuff question like that is sufficient of a foundation for any bill. And I know his bill is $104,000. But I mean, I don't care if it's a $2,000 physical therapy bill. You just can't say, well, $2,000 for eight sessions of physical therapy, is that reasonable? More of a foundation. Let me make sure you get the last word. Mr. Desmar, what's the solution here? I think the solution is very clear. I thought this evidence is very clear. I think it came in without objection. I think it came in without any cross-examination. I think it came in without any evidence being offered by the defendant to counter the evidence. You have the plaintiff testifying. You know, it has nothing to do with what the bill shows as far as the hospital bill. It has to do with what the plaintiff testified that this bill was paid. That is her testimony. It's uncontested and it's accurate. And there's no reason to question it in this case. As to the surgeon bill. While she was testifying, had you then offered that bill into evidence, counsel would have been able to clearly see, well, you're offering a bill that's not paid into evidence. You're asking her to identify so that you can now introduce it into evidence. Counsel would have objected, but you didn't offer it into evidence during your witness's testimony. With all respect, I think that's quite a disingenuous argument. Counsel knows very well, has been practicing for a long time. You know, why am I asking the plaintiff about the bill?  Later when it comes time to admit the evidence, which as I say, typically is done after the plaintiff rests. So that's why I'm asking her the question. If he had, or knew otherwise, or had reason to believe otherwise, then he could have cross-examined the plaintiff. He could have asked for a sidebar and he could have. This came up after the close of all evidence except for closing arguments, which is technically not even evidence. Well, the moving in evidence of the medical bills, but the questioning of the plaintiff, that came up during the plaintiff's testimony in our case in chief quite clearly. And it was quite clear. I'm handing her the bill for the full amount, and I'm asking her, has that bill been paid? And her testimony is yes. So, you know, the time to object to that testimony. In the bill that ultimately gets entered into evidence is an unpaid bill. No, with all respect, it's the bill. It doesn't show one way or the other. What shows it's paid is the plaintiff's testimony, which is uncontested in this case, and is the only evidence in this case that the bill was paid. They're two different issues with all respect. So the only evidence- Well, there's actually several different issues. Because there's also two different bills, and there's differences on those bills. So there's more than two issues here. I'm just saying with respect, absolutely. But with respect to this one bill that I'm isolating right now, which is the hospital bill, the testimony was uncontested that that bill was paid. And, you know, so the time for an objection to that testimony would have been during the testimony, not at some later time. So I think that that's quite clear. And as far as the hospital bill, I'm sorry, as far as the surgeon's bill, I think, again, you have uncontested testimony from a highly qualified expert. And he makes clear during the testimony that I laid out in my response brief that he's quite intimately familiar with what the charges are for his own surgeries. He's been doing it for years. He knows him quite well. I don't know where counsel gets the idea, but it's certainly not part of the evidence in this case that the doctor would have no idea what he charges. I think, personally, that's absurd. But if he had those thoughts or contentions, he could have raised them and should have raised them during the cross-examination of the doctor. So what's the evidence in this case is that the doctor testified that his bill is reasonable, and it's fairly typical in this case. So I think it's quite clear what the solution in this case is. It's to affirm this verdict, because there's no basis on which for the court to do anything else in my view. Thank you, Mr. Jesper. Mr. DeGioia, do you have any questions for Mr. Jesper before we move back to the last final word? Okay, no questions. Mr. Fabricio, your final word. Very briefly, counsel seems to say that it was up to me at some earlier point to object to the bills. There's multiple ways to skin a cat in introducing bills into evidence. Counsel chose to ask questions about all the bills and then wait until later to have them introduced. What Plaintiff's counsel could have done is shown the plaintiff exhibit number five, the first bill, asked her if the bill was paid, and then moved to introduce the bill into evidence. At that point, I would have objected. He could have done that with 6, 7, 8, 9, 10, and 11. And I would have objected each time saying, we know the bills aren't paid in full. Counsel said, well, we know the bill from Lutheran General Hospital is paid because the plaintiff said it was paid. Well, the bill itself reflects the outstanding balance right at it. And we know it's not. And I'm sorry, we know the plaintiff didn't pay the bill. The plaintiff is in her 70s and is on Medicare. And the bill from Dr. Herman's office shows that there were drastic adjustments of $1,000 of bills. I don't, I can't, you, what you are saying is, happens in every case, okay? One person says one thing and a document might say something else. But she testified unequivocally that the bill was paid. And you're saying the jury could not listen to that. And it has no credence here at all because the bill is marked unpaid. No, I can be asked about an unpaid bill and say, yes, I paid the bill. That's exactly what happened. If you believe that, then you should have asked her questions. Because all I'm saying is that was questions about her knowledge of the bill. You're saying, well, she has no knowledge. Well, wait a minute. She said, you're saying she's lying. Show us where in the record does it say she lied? I'm not saying she's lying. And I'm also not saying, I'm also not talking about the jury. I am talking about the abusive discretion by the trial judge. And exactly, this is exactly what happened in Klesiewicz v. Smith. And in Klesiewicz v. Smith, the plaintiff testified the bills are paid in full. And it was known they weren't paid in full. And the appellate court said it as- You didn't show anything to say that they weren't paid in full. There's a record in that case. Here, where is it shown? Now, you say the bills are marked unpaid. OK, OK. They'll show it. He says paid. Now, it's in your ballpark. Where is the evidence? This case is, that's exactly what happened in Klesiewicz. The appellate court held that when the judge knows the bills aren't paid in full, regardless of what the plaintiff testifies to. He doesn't know that here. He doesn't know that. The bills are from 2015. We're at trial 2019. And the question is, did you pay the bill? She said, yes. If you say she's lying, then you're in obligation. She didn't say she paid the bills. She said the bills are paid. Yes, the bills were paid. Right. And counsel even said, when we were doing arguments regarding the introduction of the exhibits, he said, well, I called the medical providers and there's no balance owing. We're not going to listen to that. That's an argument. That's not testimony. But we know the bills weren't paid in full. We don't know that. I don't know where you get that, that we know it. I want to know where we get the knowledge. Because it's in the bills that they're not paid. The Lutheran General Bill reflects that. I've said it before. But she said it's after the bills that they were paid. That's all. Thank you for your time. Unless there's other questions, that's all I get. Do we have other questions, Justices? Okay. Thank you both very much. Excellent. We appreciate it. Thank you all. Have a good afternoon. Good job to both of you. Thank you. Good job.